DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Toledo Municipal Court, Small Claims Division, in which the trial court dismissed a complaint filed by appellant, Marvin L. Gray, and granted a counterclaim filed by appellee, Olga Nunez, in an action for breach of contract. On appeal, appellant sets forth the following assignment of error: *Page 2 
 {¶ 2} "The magistrate's recommendation, as affirmed by the trial court in response to Gray's objections, constitutes an abuse of discretion."
 {¶ 3} On June 25, 2007, appellant and appellee entered into an agreement whereby appellant was to replace the roof on appellee's house for $7,000. The money was to be paid by appellee's home insurer, State Farm. A "roof proposal" signed by both parties stated that, for $7,000, appellant would do the following:
 {¶ 4} "1. Two-layer tear off on house.
 {¶ 5} "2. Install new felt and drip edge.
 {¶ 6} "3. Re-flash and seal chimney.
 {¶ 7} "4. Install eight new roof vents.
 {¶ 8} "5. Install 30-yr. dimensional shingles.
 {¶ 9} "6. Cleanup and haul away all debris."
 {¶ 10} The roof proposal further stated that "Any sheeting to be replaced will be an additional charge of $1.75 per sq ft (no charge for the first two sheets). Existing gutters can not [sic] be salvaged. The price in this proposal does not include replacing gutters. Homeowner to pull all permits." Pursuant to the proposal, appellee was to pay appellant $3,500 upon signing of the proposal, and $3,500 upon completion of the roof job. The proposal further provided that "[a]ny modifications or additions to this contract may result in an additional charge."
 {¶ 11} Upon removing the shingles from appellee's roof, appellant discovered that significant amounts of wood underneath the shingles were rotten and/or broken. Instead *Page 3 
of removing and replacing all of the rotten and broken boards, appellant covered some of them with aluminum. He then completed the roofing job.
 {¶ 12} Eventually, State Farm issued a check for $7,000, which appellee paid to appellant. However, appellee refused to pay an additional invoice for $1,391.25, which appellant claimed was the cost of replacing the boards and installing the aluminum.
 {¶ 13} On August 31, 2007, appellant's attorney sent appellee a letter stating that failure to pay the outstanding debt to appellant "may result in a lawsuit being filed against [appellee] to recover the outstanding balance." On September 19, 2007, appellee responded in a letter, in which she stated that she did not authorize appellant to cover portions of her roof with aluminum, and the $7,000 price for the new roof should have included replacement of all the rotten and/or broken wood. Accordingly, appellee refused to pay any additional money.
 {¶ 14} On September 27, 2007, appellant filed the complaint herein, in which he sought payment of $1,391.25, plus interest and court costs. On October 25, 2007, appellee filed an answer, in which appellee denied that she owed appellant any additional money for the roof. In addition, appellee counterclaimed for damages in an amount sufficient to pay another contractor "for repairs necessary to make additional improvements which [appellant] did not complete * * *."
 {¶ 15} A hearing was held on November 20, 2007, before a small claims magistrate. Appellant represented himself at the hearing while appellee, who speaks little or no English, was represented by an attorney and assisted by a court translator. *Page 4 
 {¶ 16} At the outset of the hearing, the magistrate stated that he "recognized" appellee from the community, to which she responded "I know you, yes." Thereafter, appellant testified as to the terms of the roofing proposal. Appellant also testified that, upon tearing off the old shingles, he discovered that the roof was rotted and broken at the edges under the gutters, and had "extensive damage" extending more than 40 feet on each side. Appellant further testified that appellee told him she "didn't have the extra money" and to "do as least as we could" to fix the problem, after which he suggested using aluminum to cover up some of the damaged areas.
 {¶ 17} On cross-examination, appellant testified that State Farm told him that any additional roof work would have to be paid by appellee. Appellant stated that he believed appellee was obligated to pay for the additional work, since the roofing proposal contemplated that work beyond the listed tasks could result in additional charges.
 {¶ 18} Appellee testified at the hearing that she never agreed to have appellant install aluminum on the roof instead of replacing the rotten boards with new wood. Appellee stated that she and appellant did a "walk through" of the attic after appellant said the job was complete, during which appellee began crying when she saw rotted and broken wood on the underside of the roof. Appellee further stated that she authorized appellant to replace all the rotten wood; however, she believed that the extra work was covered by the $7,000 contract price.
 {¶ 19} As to her counterclaim, appellee testified that she had the roof checked by two different contractors, both of whom stated that the work was incorrectly done by *Page 5 
appellant. In support, appellee presented pictures which appear to depict broken and/or rotten wood and what appears to be aluminum on the underside of the roof. In addition, appellee presented an estimate from Freddy's Home Improvement, which states that the price of repairing the roof to appellee's satisfaction would be $1,685.
 {¶ 20} At the close of all the evidence, the magistrate took the matter under advisement. On November 30, 2007, the magistrate issued a decision in which he found that appellant "failed to complete the job in a workmanlike manner," which required appellee to hire another contractor to "repair" appellant's work. Accordingly, the magistrate recommended that appellant's claim be dismissed and appellee be awarded $1,685 plus court costs on her counterclaim. Appellant filed objections to the magistrate's report, which were overruled by the trial court on January 31, 2008. A timely appeal was filed; however, on May 2, 2008, this court, acting sua sponte, dismissed the appeal because the judgment entry did not comply with Civ. R. 54(A).
 {¶ 21} On June 10, 2008, the trial court filed a nunc pro tunc judgment entry, in which it found that the cost of replacing the rotted wood was covered by the original contract between appellant and appellee. In addition, the trial court found that appellant and appellee did not have an enforceable contract whereby appellee agreed to pay appellant extra money for more labor and materials. Finally, the trial court found that appellant never finished the job, requiring appellee to pay another contractor "to repair [appellant's] poor workmanship." Accordingly, the trial court dismissed appellant's complaint and awarded appellee judgment in the amount of $1,685 plus court costs on *Page 6 
her counterclaim. The judgment entry was journalized on July 18, 2008, and a timely notice of appeal was filed on August 13, 2008.
 {¶ 22} In his assignment of error, appellant asserts that the trial court erred by upholding the magistrate's findings that appellant was not entitled to additional payment for his work on appellee's roof, and that appellee was entitled to reimbursement for additional work done to "correct" appellant's substandard workmanship. In support, appellant argues that: (1) evidence presented at the hearing establishes that the parties had a contract, which included extra payment for the additional work performed by appellant; and (2) appellee presented only opinions, not evidence, that more work was required after appellant finished the tasks he had contracted to perform.
 {¶ 23} In his brief, appellant states that the standard of review in this appeal is abuse of discretion. However, even if a case was initially heard by a magistrate, the appropriate standard of review in a contract case is whether the trial court erred as a matter of law.Schalmo Bldrs., Inc. v. Zama, 8th Dist. No. 90782, 2008-Ohio-5879, ¶ 14. Accordingly, we "must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. * * *" Continental W. Condo. Unit Owners Assn. v. Howard E. Ferguson,Inc., 74 Ohio St.3d 501, 502, 1996-Ohio-158. In so doing, we must keep in mind that "an appellate court gives due deference to the trial court's findings of fact, so long as they are supported by competent, credible evidence." The Four Howards Ltd. v. J F Wenz Road Investment,L.L.C., 6th Dist. No. L-07-1200, *Page 7 2008-Ohio-6174, ¶ 63, citing State v. Clements, 5th Dist. No. 08 CA 31,2008-Ohio-5549, ¶ 11.
 {¶ 24} In Ohio, "a valid contract may be either written or oral."Greene Co. Dept. of Job and Family Svcs. v. Ohio Public Emps. RetirementSys., 10th Dist. No. 07AP-421, 2008-Ohio-642, ¶ 20, citing Ayad v.Radio One, Inc., 8th Dist. No. 88031, 2007-Ohio-2493, at ¶ 24. Where, as here, it is alleged that an oral agreement exists which changes or supplements the terms of a written contract, such an oral agreement "`must be a valid and binding contract in its own right * * *.'"McKay v. Promex Midwest Corp., 2d Dist. No. 20112, 2004-Ohio-3576, ¶ 66, quoting Richland Builders v. Thome (1950), 88 Ohio App. 520.
 {¶ 25} Ultimately, for any contract to be enforceable, there must be a meeting of the minds as to the essential terms of the contract.Greene Co. Dept. of Job and Family Svcs., supra, citing Kostelnik v.Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16. The elements necessary for a contract to be binding are an offer, acceptance, and adequate consideration. Id.
 {¶ 26} In this case, although the initial roof proposal contained a written statement that additional payment could be required, it is undisputed that the parties did not agree in writing that appellee would pay appellant additional money to replace rotten and/or broken boards. Appellant claims that the trial court had before it evidence to show that the parties had an oral agreement to that effect. However, appellee testified that she *Page 8 
believed replacement of the rotten and/or broken boards was included in the original $7,000 contract price.
 {¶ 27} The trial court, after considering the evidence, found that "the original contract already contemplated the cost of wood materials needed for repairs." The trial court also found that appellant received "fair compensation" for his work on appellee's roof, and that additional work was required to repair appellant's "poor workmanship." Accordingly, the trial court dismissed appellant's claim and awarded appellee $1,685 on her counterclaim.
 {¶ 28} This court has considered the entire record that was before the trial court and, upon consideration, finds that appellant did not present sufficient competent, credible evidence to show that the parties agreed on what additional work would be performed on appellee's roof, or that appellant would be entitled to extra compensation beyond the $7,000 contract price. Accordingly, the trial court did not err by dismissing appellant's claim and awarding appellee the cost of hiring another contractor to properly fix the roof. Appellant's sole assignment of error is not well-taken.
 {¶ 29} The judgment of the Toledo Municipal Court, Small Claims Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED. *Page 9 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., William J. Skow, P.J., Thomas J. Osowik, J. CONCUR. *Page 1